HAYS v LUTHERAN SOCIAL SERVICES OF MICHIGAN

Docket No. 307414. Submitted January 10, 2013, at Lansing. Decided
    January 22, 2013. Approved for publication March 19, 2013, at
    9:20 a.m. Leave to appeal denied, 494 Mich 869.

Barbara J. Hays brought an action in the Midland Circuit Court
    against Lutheran Social Services of Michigan after it terminated
    her employment. Plaintiff was a home-healthcare worker em-
    ployed by defendant. One of her clients smoked marijuana in his
    home and in plaintiff's presence. She discussed this with her
    supervisor and coworkers and eventually spoke to an official of a
    local narcotics enforcement team, inquiring about the potential
    consequences for someone who knew about another person's drug
    use and failed to report it. When asked by the official, she declined
    to take further action. Plaintiff had signed a confidentiality
    agreement related to information about clients. Defendant subse-
    quently told plaintiff about a complaint lodged against her for
    making a phone call about the client. Plaintiff alleged in her action
    that defendant had terminated her employment in violation of the
    Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, assert-
    ing theories that she had been terminated for making a report
    protected by the WPA and for being about to make a report. The
    court, Michael J. Beale, J., granted defendant summary disposition
    on the second claim and denied it with respect to the first. After a
    jury trial, the court entered a judgment in plaintiff's favor and
    awarded her attorney fees and costs, but only as case evaluation
    sanctions. Defendant appealed the denial of summary disposition,
    and plaintiff cross-appealed the dismissal of her about-to-report
    WPA claim and the partial denial of her motion for attorney fees.

The Court of Appeals *held*:

1. The WPA provides a remedy for an employee who suffers
    retaliation for reporting or planning to report a suspected violation
    of a law, a regulation, or a rule to a public body. The purpose of the
    WPA is to protect the public by facilitating employee reporting of
    illegal activity. To establish a prima facie case under the WPA, the
    plaintiff must show that (1) he or she was engaged in a protected
    activity as defined by the WPA, (2) he or she was discharged, and
    (3) a causal connection existed between the protected activity and

the discharge. With regard to the first element of a prima facie case, a plaintiff engages in a protected activity when he or she (1) reports to a public body a violation of a law, a regulation, or a rule, (2) is about to report such a violation to a public body, or (3) is being asked by a public body to participate in an investigation.

2. Defendant argued that plaintiff failed to actually make a report. While the WPA does not define "report," the term means a detailed account of an event or situation, usually based on observation or inquiry. Plaintiff called the officer to inquire about her potential liability if her client's behavior was discovered, not to report any illegal behavior. She did not provide any particulars or otherwise convey information that could have assisted the officer in actually investigating any wrongdoing, and she declined to take further action. There was no evidence that plaintiff identified herself, the client, or the client's location, and she did not provide any sort of detailed account of the situation. Thus, rather than providing a detailed account of an event or situation, plaintiff was merely seeking to obtain information and advice. Categorizing plaintiff's inquiry as a report would not further the purpose of the WPA. Because plaintiff failed to establish that she made a report under the WPA, defendant was entitled to summary disposition on that ground.

3. Plaintiff argued that the trial court improperly granted defendant summary disposition on the WPA claim that was based on her being about to report a suspected violation. Under the WPA, an employee who is about to report a violation receives the same level of protection as one who has reported to a public body. Under MCL 15.363(4), however, an employee seeking protection on the basis of being about to report a violation must prove his or her intent by clear and convincing evidence. The employer is also entitled to objective notice of the whistleblower's report or threat to report. Simply because plaintiff called the official to inquire about her potential liability did not demonstrate that she intended to take any further action and actually report the client's behavior to a public body. In fact, she declined the offer to do so. Plaintiff's discussions with coworkers and supervisors about the client's behavior also failed to demonstrate that she intended to report the behavior. Her conversations demonstrated only that while she knew of the behavior and had a sufficiently long time to report it, she declined to do so. There was also no evidence that plaintiff informed anyone that she was about to take further action and report the behavior to a public body. Consequently, there was no clear and convincing evidence that defendant received objective notice or that plaintiff intended to report the behavior to a public

body, and the trial court did not err by granting summary disposition to defendant on this claim.

4. There was no need to consider plaintiff's arguments concerning attorney fees because she was no longer a prevailing party and was not entitled to fees.

Judgment for plaintiff and attorney-fee award reversed; case remanded for further proceedings.

MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — REPORTS TO PUBLIC BODY — PRIMA FACIE CASE.

To establish a prima facie case under the Whistleblowers' Protection Act, the plaintiff must show that (1) he or she was engaged in a protected activity as defined by the act, (2) he or she was discharged, and (3) a causal connection existed between the protected activity and the discharge; with regard to the first element of a prima facie case, a plaintiff engages in a protected activity when he or she (1) reports to a public body a violation of a law, a regulation, or a rule, (2) is about to report such a violation to a public body, or (3) is being asked by a public body to participate in an investigation; the term "report" means a detailed account of an event or situation, usually based on observation or inquiry; an employee who is about to report a violation receives the same level of protection as one who has reported to a public body, but an employee seeking protection on the basis of being about to report a violation must prove his or her intent by clear and convincing evidence and the employer is entitled to objective notice of the whistleblower's report or threat to report; a simple inquiry about the plaintiff's potential liability if he or she does not report the violation does not by itself demonstrate an intent to take any further action and actually report the violation (MCL 15.361 *et seq.*).

*Gafkay & Gardner, PLC* (by *Julie A. Gafkay* and *Katherine S. Gardner*), for plaintiff.

Clark Hill PLC (by *Mark W.McInerney* and *Kymberly N. Kinchen*) for defendant.

Before: OWENS, P.J., and FITZGERALD and RIORDAN, JJ.

PER CURIAM. In this action brought under the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361

*et seq.*, defendant, Lutheran Social Services of Michigan, appeals as of right a judgment entered in plaintiff's favor. Plaintiff cross-appeals regarding the trial court's dismissal of her "about to report" claim under the WPA and the partial denial of her motion for attorney fees. We reverse and remand for proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Plaintiff was employed as a home-healthcare provider for defendant. During the course of her employment, she encountered Client A, who smoked marijuana in his home and in plaintiff's presence when she was there on assignment by her employer. Plaintiff was informed of Client A's drug use before entering his home, and she discussed it with her supervisor and other coworkers. During one discussion with a coworker about Client A's drug use, plaintiff decided to call 911 and asked to be connected to the Bay Area Narcotics Enforcement Team (BAYANET). When speaking with a BAYANET official, plaintiff inquired about the potential consequences of someone knowing about the drug use of another and not reporting it. At the conclusion of the conversation, when asked by the BAYANET official if she would like to take any further action, plaintiff declined to do so.

As a condition of her employment, plaintiff had signed a client confidentially agreement, consenting to keep information about her clients confidential. Plaintiff was eventually called into a meeting with her supervisor, at which the supervisor informed her that a complaint had been lodged against plaintiff for making a phone call about Client A. Plaintiff admitted to her supervisor that she called BAYANET. Plaintiff also recalled that her supervisor mentioned another phone

call she supposedly made to an insurance company about Client A, although plaintiff denied making that call.

After she was terminated, plaintiff initiated this litigation, claiming that she was terminated in violation of the WPA. While defendant moved for summary disposition on plaintiff's "report" and "about to report" claims, the trial court only granted the motion with respect to the latter claim. After a jury trial, a judgment was awarded in plaintiff's favor in the amount of $77,897.50. The trial court also awarded attorney fees and costs to plaintiff consistently with case evaluation sanctions in the amount of $69,385.55. Defendant now appeals, and plaintiff cross-appeals.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

A grant or denial of a motion for summary disposition is reviewed de novo. *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). Statutory interpretation also presents a question of law that we review de novo. *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010).

### B. "REPORT" UNDER THE WPA

"The WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). The purpose of the WPA is to protect the public by facilitating employee reporting of illegal activity. *Id.* at 631. It is the plaintiff's burden to establish a prima facie case under the WPA, which requires a showing that "(1) the plaintiff was

engaged in a protected activity as defined by the WPA, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004). "The determination whether evidence establishes a prima facie case under the WPA is a question of law that this Court reviews de novo." *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 278; 608 NW2d 525 (2000).

In regard to the first element of a prima facie case, a plaintiff engages in a protected activity when he or she (1) reports to a public body a violation of the law, a regulation, or a rule, (2) is about to report such a violation to a public body, or (3) is being asked by a public body to participate in an investigation. *Manzo*, 261 Mich App at 712-713; see also *Ernsting v Ave Maria College*, 274 Mich App 506, 510-511; 736 NW2d '574 (2007). On appeal, defendant argues that the trial court erred by denying its motion for summary disposition because plaintiff failed to actually make a report. As a matter of statutory interpretation, the definition of "report" is a question of law we review de novo. See *Hoffman*, 290 Mich App at 39. While the WPA does not define the term "report," courts may consult dictionary definitions when giving undefined statutory terms their plain and ordinary meaning. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Accordingly, *Random House Webster's College Dictionary* (2005) defines "report" as "a detailed account of an event, situation, etc., [usually] based on observation or inquiry."[1]

---

[1] Similarly, in *People v Holley*, 480 Mich 222, 228; 747 NW2d 856 (2008), our Supreme Court relied on *Random House Webster's College Dictionary* (2001) in defining "report" identically in the context of reporting a crime.

According to plaintiff's deposition testimony, she asked the BAYANET officer the following question: "If you're in a situation where there's illegal drugs and you happen -- and this person happens to get in trouble, what is your consequence?" Essentially, plaintiff called the BAYANET officer to inquire about her potential liability if Client A's behavior was discovered, not to report any illegal behavior. Plaintiff did not provide any particulars or otherwise convey information that could have assisted the BAYANET officer in actually investigating any wrongdoing. There is no evidence that plaintiff identified herself, Client A, or Client A's location, nor did she provide any sort of detailed account of the situation. She did not even appear to specify the type of "illegal drugs" at issue. Thus, rather than providing a "detailed account of an event, situation, etc.," plaintiff was merely seeking to obtain information and advice.[2] Her lack of behavior that would constitute reporting is underscored by her negative response when

---

[2] Analogous is *Garrie v James L Gray, Inc*, 912 F2d 808 (CA 5, 1990), a case from the United States Court of Appeals for the Fifth Circuit. *Garrie* involved a plaintiff who was employed as a skipper on a ship owned by the defendant. *Id.* at 809. The plaintiff called the Coast Guard and identified himself, but not his employer, and inquired about whether "the regulation regarding maximum working hours was still in effect," although he declined to file a formal complaint. *Id.* (quotation marks omitted). In rejecting the plaintiff's argument that his behavior constituted a report, the court concluded that the plaintiff had

> merely made an inquiry of the Coast Guard as to whether a particular statute was still in effect. He sought information, but did not provide it. He did not file a·complaint, nor did he reveal the name of his employer or the vessel upon which he was employed—information without which the Coast Guard could not investigate or prosecute a violation.

*Id.* at 812. Likewise in the instant case, plaintiff sought information without providing anything to BAYANET that it could investigate or use to prosecute any potential violation.

the BAYANET officer asked if she wanted to take any further action.

Plaintiff analogizes the instant case to *Whitaker v US Sec Assoc, Inc*, 774 F Supp 2d 860 (ED Mich, 2011). In *Whitaker*, the plaintiff was a security officer at the Detroit Metropolitan Wayne County Airport, and he brought an action under the WPA against the defendant, claiming that the defendant had retaliated against him for internal complaints and an e-mail he sent to the Transportation Security Administration (TSA). *Id.* at 861-865. The e-mail identified gate-related security issues at the airport and indicated that the plaintiff had "some questions on the regulations." *Id.* at 863.

The federal district court held that the plaintiff had established a prima facie case under the WPA because the e-mail was a "report." *Id.* at 868, 871. The court explained that the e-mail specifically identified two problems and communicated the plaintiff's intent to learn more about the regulations applicable to the two security concerns. *Id.* at 868-869. The court noted that the TSA and the defendant's own management construed this email as "raising concrete security concerns that warranted further investigation . . . ." *Id.* at 868. Ultimately, the court rejected the defendant's contention that the plaintiff's e-mail "merely posed questions and sought information . . . ." *Id.* at 869.

*Whitaker* is not similar to the instant case. The plaintiff in *Whitaker* specifically identified the regulatory violations and provided the TSA with sufficient information to further investigate the regulatory violations. Here, in contrast, plaintiff only referred to "illegal drugs" and did not provide the BAYANET officer with any information to further investigate the illegal activity. Thus, plaintiff's reliance on *Whitaker* is misplaced.

Moreover, categorizing plaintiff's behavior as a report under the WPA would not further the purpose of the statute, namely, to protect the public by encouraging reporting of illegal activity. Plaintiff's phone call did not provide law enforcement with the means to investigate Client A's marijuana use or to protect the public from that behavior. Plaintiff's only concern was to obtain information about her hypothetical liability, not to provide law enforcement officials with any concrete facts from which they could actually investigate or enforce the law. Thus, plaintiff failed to establish that she made a report under the WPA and because she failed to establish a prima facie case, defendant was entitled to summary disposition.[3]

### C. "ABOUT TO REPORT" UNDER THE WPA

On cross-appeal, plaintiff argues that the trial court improperly dismissed her "about to report" claim and granted summary disposition to defendant. As noted, the WPA extends to employees who are about to report a suspected violation. *Manzo*, 261 Mich App at 712-713. Thus, "[a] plain meaning reading of the act shows that an employee 'about to' report receives the same level of protection as one who has reported to a public body." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 611; 566 NW2d 571 (1997). An "employee seeking protection under the 'about to report' language of the

---

[3] While plaintiff cites her trial testimony to support her argument that she did make a report, when reviewing a trial court's decision on a motion for summary disposition this Court considers only "what was properly presented to the trial court before its decision on the motion." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010) (quotation marks and citation omitted). Furthermore, despite plaintiff's opinion at trial that she did make a report, the lack of any specific detail provided to the BAYANET officer about Client A clearly demonstrates that plaintiff was merely making an inquiry, not a report.

act [must] prove his intent by clear and convincing evidence." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 400; 572 NW2d 210 (1998); see also MCL 15.363(4). The employer also is entitled "to objective notice of a report or a threat to report by the whistle-blower." *Roulston*, 239 Mich App at 279 (quotation marks and citations omitted).

In the instant case, plaintiff discussed Client A's marijuana use with her supervisor and coworkers and called BAYANET to inquire about any potential liability. Plaintiff argues that these facts establish a prima facie case that she was about to report a violation. In particular, plaintiff relies on her phone call to BAYANET to support her argument that she was about to report Client A's behavior. However, as discussed earlier, that phone call was not a report. Moreover, simply because plaintiff called BAYANET to inquire about her potential liability does not demonstrate that she intended to take any further action and actually report the behavior to a public body. In fact, when the BAYANET officer asked if she would like to take any further action, plaintiff declined the offer. Plaintiff's discussions with coworkers and supervisors about Client A's behavior also fail to demonstrate that she intended to report the behavior. Her conversations demonstrate only that while plaintiff knew about the behavior and had a sufficiently long time to report the behavior, she declined to do so.

There also is no evidence that plaintiff informed anyone that she was about to take further action and report the behavior to a public body. In sharp contrast is *Shallal*, 455 Mich at 613-614, 621, in which the plaintiff told the president of the company that she would report him for misusing funds and abusing alcohol if he did not "straighten up." The plaintiff in *Shallal* also discussed with various individuals the possibility of reporting the

president's behavior. *Id.* at 613-614, 620 n 9. Our Supreme Court held that the plaintiff's explicit threat to report the president combined with her other actions satisfied the "about to report" language of the statute. *Id.* at 615, 621. Yet in the instant case, there is no evidence that plaintiff communicated such an explicit threat to report the behavior. There also is no evidence that plaintiff informed others that she intended to actually report the behavior to a public body.

Consequently, there is no evidence that defendant received objective notice that plaintiff was about to report Client A's behavior to a public body. Plaintiff never informed or threatened defendant that she would place a second call to BAYANET or another law enforcement agency. There is nothing in the record to suggest that plaintiff explicitly or implicitly informed defendant that a report of Client A's illegal activity was pending. Therefore, the trial court did not err by granting summary disposition to defendant on plaintiff's "about to report" claim because there is no clear and convincing evidence of her intent to report the behavior.

### III. CONCLUSION

Because plaintiff failed to establish a prima facie case for her "report" and "about to report" claims under the WPA, defendant was entitled to summary disposition. We decline to address plaintiff's arguments concerning attorney fees because she is no longer a prevailing party and is not entitled to fees. We reverse the trial court's judgment in favor of plaintiff and the award of fees and costs to plaintiff. We remand this case for proceedings consistent with this opinion and do not retain jurisdiction.

OWENS, P.J., and FITZGERALD and RIORDAN, JJ., concurred.