# STATE OF MICHIGAN

# COURT OF APPEALS

ROSE MARY SCHUESSLER,

        Plaintiff-Appellant,

v

ROMAN CATHOLIC DIOCESE OF GRAND
RAPIDS, HOLY CROSS CEMETERY,
CATHOLIC CEMETERIES EXTENDED CARE
FUND, REVEREND DAVID JOHN
WALKOWIAK, and T. EDWARD CAREY, JR.,

        Defendants-Appellees.

UNPUBLISHED
June 20, 2017

No. 331985
Kent Circuit Court
LC No. 15-002064-NZ

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

Plaintiff, Rose Mary Schuessler, appeals as of right the order of the Kent Circuit Court granting summary disposition in favor of defendants, Roman Catholic Diocese of Grand Rapids, Holy Cross Cemetery, Catholic Cemeteries Extended Care Fund, Reverend David John Walkowiak, and T. Edward Carey, Jr, and dismissing plaintiff's Whistleblowers' Protection Act (WPA) and related public policy claims. The trial court concluded that plaintiff failed to establish a prima facie case for the WPA claim and that the WPA preempted plaintiff's public policy claim arising out of the same facts. We affirm.

Plaintiff began working for the diocesan cemeteries in 2006 as a family service counselor. In 2014, plaintiff began to suspect a fellow employee, Michael Wawee, of embezzling money and otherwise stealing from the diocesan cemetery. Plaintiff reported this suspicion to her supervisors and to police, and assisted in the prosecutor's investigation of Wawee. Wawee was criminally charged for his conduct. Shortly after Wawee pleaded no contest to charges of embezzlement and false pretenses,[1] the diocesan cemetery hired Wawee's uncle, James Arsulowicz, as Director of Cemeteries. Arsuolowicz fired plaintiff shortly after he took over, after he was informed of a conversation—occurring at the cemetery during working hours—during which plaintiff referred to her coworkers as "bitches." Shortly thereafter,

---

[1] Wawee was sentenced to a one-year term of imprisonment with substantial restitution.

Arsuolowicz fired the remaining family service counselors as part of a planned elimination of that position.

Plaintiff filed suit and raised several claims: violation of the WPA, MCL 15.361 *et seq.*; wrongful termination in violation of Michigan public policy; breach of implied contract; intentional infliction of emotional distress (IIED); and civil conspiracy. Plaintiff eventually stipulated to dismiss her IIED claim. After defendants moved for summary disposition, plaintiff expressly abandoned her implied contract claim, and the trial court granted summary disposition to defendants under MCR 2.116(C)(10) on the WPA, public policy, and civil conspiracy claims. On appeal, plaintiff argues that the trial court erred in granting summary disposition in favor of defendants regarding her WPA claim and public policy claim. Plaintiff does not challenge summary disposition on the civil conspiracy claim.

We review de novo the trial court's grant of summary disposition, including its conclusions that plaintiff failed to establish a prima facie case under the WPA and that the WPA preempted plaintiff's public policy claims. *Hays v Lutheran Social Servs of Mich*, 300 Mich App 54, 58-59; 832 NW2d 433 (2013). When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

The WPA is designed to promote "public health and safety" and was enacted to encourage employees to assist law enforcement investigations into illegal conduct occurring at the workplace. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378; 563 NW2d 23 (1997). "The act meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Id.* at 378-379. "The WPA provides the exclusive remedy for [a] retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity." *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804 (2011).

Here, plaintiff's public policy claim was based on her allegation that she was discharged as retaliation for reporting Wawee's unlawful conduct.[2] Because plaintiff's public policy claim arises out of the reporting activity protected by the WPA, the WPA was her exclusive remedy,

---

[2] We note that, within the public policy claim in the complaint, plaintiff also alleged that she was discharged "in whole or in part for refusing to participate in the fraud, waste, and/or abuse taking place in her place of employment and with regard to her employment." Plaintiff does not argue on appeal, however, that this refusal is why the public policy claim should stand in addition to the WPA claim. Further, even if we were to consider such an argument, plaintiff failed to provide evidentiary support for the notion that defendants wished for her to engage in unlawful activity.

and preempts her public policy claim. See *Dolan*, 454 Mich at 383. Accordingly, the trial court properly granted summary disposition to defendants on plaintiff's public policy claim.

With respect to the WPA claim itself, plaintiff bore the burden of establishing a prima facie case of unlawful retaliation for protected conduct. *Hays*, 300 Mich App at 58-59. To meet this burden, plaintiff was required to show: "(1) [she] was engaged in protected activity as defined by the act, (2) [she] suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Whitman v Burton*, 493 Mich 303, 313; 831 NW2d 223 (2013). The parties do not dispute that Plaintiff met her burden regarding the first two elements and causation is the only element at issue.

"Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013). When there is no direct evidence of causation, as in this case, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Debano-Griffin,* 493 Mich at 176. Under the first step of this framework, "plaintiff may present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful retaliation." *Id*. (internal quotation notation and citation omitted). If the "plaintiff establishes a prima facie case, a presumption of retaliation arises." *Id*. (internal quotation notation and citation omitted). To rebut this presumption, defendant bears the burden of showing a legitimate reason for the adverse employment action. *Id.* Upon such a showing, the burden shifts back to plaintiff "to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action." *Id*. (internal quotation marks and citation omitted). To survive summary disposition, "plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful retaliation]." *Id*. (internal quotation marks and citation omitted). Defendant is entitled to summary disposition if plaintiff fails to meet either of her burdens.

Here, plaintiff alleged that she worked for the diocesan cemeteries since 2006, that she reported unlawful activity regarding a fellow employee, Wawee, to a public body, and that her employment was terminated soon after the diocese hired Wawee's uncle, Arsulowicz. Primarily, plaintiff argues that the temporal nexus between her termination and Arsulowicz's hiring, in combination with the familial relationship, demonstrates a causal connection between her protected WPA activity and her termination. We disagree.

Regarding the timing of plaintiff's termination, "a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action" *West v General Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where [unlawful] retaliation is claimed." *Id*.

While, in the run of the mill case, a family relationship may be sufficient to support an inference of unlawful retaliation, the familial relationship in this case is insufficient to infer causation. Arsulowicz's deposition testimony and affidavit indicated that he was not close with Wawee, that he did not spend a lot of time or socialize with Wawee, and that he had very little

contact with Wawee over the past few years. Additionally, Arsuolowicz testified that he believed that plaintiff played only an occasional role in the investigation and that another employee, Angela Yondo, was hired specifically to assist Andrea Krause, the prosecuting attorney in the Wawee case. For her part, Krause confirmed that Yondo played a "key role" in the investigation. Despite Yondo's prominent role in the investigation, Arsuolowicz did not fire her, and no party has produced any evidence that indicates that Arsuolowicz showed Yondo any ill will. Moreover, Krause indicated that the investigative team had already discovered evidence of Wawee's wrongdoing before receiving any additional assistance from plaintiff. Accordingly, we find the familial relationship insufficient for a reasonable factfinder to conclude that plaintiff's termination was a result of any unlawful retaliation for participation in the investigation of Wawee's unlawful conduct.

Turning to plaintiff's additional support for her prima facie case, plaintiff alleged that (1) Arzulowicz protected Mary Beth Rothenthaler, an employee plaintiff alleges assisted Wawee's unlawful conduct, (2) defendants failed to take action against a second employee, Allen Van Maastricht, despite his involvement in the conversation leading to plaintiff's termination, and (3) Arzulowicz promoted his nephew, Anthony Smith, despite Smith's involvement with Wawee's unlawful activity. Plaintiff, however, provided insufficient evidentiary support to establish these facts or to otherwise infer causation.

With respect to Rothenthaler, Plaintiff alleged that she was fired, in part, because she criticized Rothenthaler for impeding the investigation. Plaintiff further alleged that Rothenthaler knew of Wawee's misconduct, and affirmatively assisted that misconduct. Krause, however, testified that her team interviewed Rothenthaler and did not determine that she was engaged in any wrongdoing, otherwise knew of Wawee's misconduct, or impeded the investigation in any manner. Plaintiff's speculation and conjecture regarding Rotenthaler's alleged impropriety, without evidentiary support, is insufficient to create a triable issue of fact and insufficient to meet her burden of establishing a prima facie case of unlawful retaliation. See *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993)

Next, plaintiff alleged that defendants failed to fire Van Maastricht immediately, despite his involvement in the conversation precipitating plaintiff's termination. Plaintiff contends that this different treatment is sufficient for a reasonable factfinder to support an inference of unlawful retaliation sufficient to establish her prima facie case. While the record does indicate that Van Maastricht may have been present for the conversation in which plaintiff referred to other employees as "bitches," there is no evidence indicating that Van Maastricht used such language or otherwise acted unprofessionally. Accordingly, that defendants did not immediately fire Van Maastricht—who was terminated several weeks later with the elimination of the family service counselor position—does not support an inference that defendants engaged in unlawful retaliation.

Finally, with respect to Smith, while the record shows that Smith did engage in some impropriety, plaintiff provided no evidence to show that Arsulowicz had knowledge of Smith's impropriety. This lack of evidence is fatal to plaintiff's final attempt to establish a rebuttable presumption of unlawful retaliation.

Viewing the evidence submitted by the parties in a light most favorable to plaintiff, a reasonable factfinder could not infer that plaintiff's termination was the result of defendants' unlawful retaliation for plaintiff's participation in the Wawee case. See *Debano-Griffin*, 493 Mich at 176. For this reason, we conclude that the trial court properly granted summary disposition to defendants under MCR 2.116(C)(10).

Finally, we note that, even had plaintiff met her initial burden to establish a rebuttable presumption of discrimination, defendants offered a legitimate, non-retaliatory reason for plaintiff's termination in that plaintiff's termination was part of a planned elimination of the family service counselor position and that plaintiff's unprofessional conduct accelerated that termination by a few weeks. The record supports these assertions and plaintiff has provided no evidence sufficient for a reasonable factfinder to conclude that defendants' proffered reason for plaintiff's termination was a pretext for unlawful retaliation.

Affirmed.


/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell