*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LISA KAPANOWSKI,

        Plaintiff-Appellant,

v

SHERWOOD R. KRAUSE, doing business as ALL PARTITIONS AND PARTS, LLC, and DEBORAH BERSCHBACH,

        Defendants-Appellees.

UNPUBLISHED
September 29, 2022

No. 357559
Oakland Circuit Court
LC No. 2020-183157-CD

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

The circuit court summarily dismissed Lisa Kapanowski's suit against her employer for wrongful termination under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. Kapanowski created a genuine issue of material fact that her termination was based on a report she made about her COVID-19 workplace safety concerns, a protected activity. We vacate the circuit court order and remand for continued proceedings.

## I. BACKGROUND

Kapanowski was one of seven sales associates at All Partitions and Parts, LLC (APP). Deborah Berschbach is a part owner of the company and direct supervisor of the sales associates. On March 23, 2020, in response to the COVID-19 outbreak, Governor Whitmer issued Executive Order No. 2020-21, which prohibited nonessential in-person work, ordered persons to stay at home, and required persons to stay six feet away from each other. One week before the stay-at-home order issued, Berschbach allowed Kapanowski to begin at-home employment because she lived with her 82-year-old mother and was afraid of infecting her. At that time Kapanowski e-mailed the governor's office asking that it shut down the FCA Chrysler plants, where her husband worked, to protect the workers from COVID-19. All APP employees began working from home on March 23.

On May 22, Berschbach asked APP's sales associates to return to the office on May 26, because the governor had issued an order allowing gatherings of 10 people or less. Kapanowski

-1-

expressed her concern with returning to in-office work and asked for accommodation. Berschbach gave Kapanowski three choices: (1) return to work, (2) quit, or (3) continue to work at home until June 15, but at a 50% pay cut. Kapanowski selected the third option. On June 1, Berschbach informed Kapanowski that the stay-at-home order had been lifted and she expected her to return to the office. Kapanowski complied on June 3.

After her first day back in the office, Kapanowski posted the following message on Facebook:

> Today was the first day that I had to leave the safety of my Coronavirus free shelter and venture out into the contaminated cesspool of everything outside of my home. Hoping and praying I don't bring home the virus and kill my mother.
>
> I know a lot of people feel like "It's good to get back to normal." But I am really quite fed up hearing that. This is not normal. The numbers are going to spike again. Common sense says we are nowhere near this being anywhere near over. But yay, let's pretend this is ok, all in the name of the almighty dollar.

This message offended Kapanowski's coworkers and Berschbach asked her to apologize. Kapanowski did. But Berschbach told Kapanowski that she did not know if she wanted her to work at APP any longer. The incident allegedly lowered morale in the office and everyone felt uncomfortable around Kapanowski.

On June 9, 2020, Kapanowski called the Oakland County Health Department to inquire about COVID-19 safety regulations for small businesses. The health department gave Kapanowski a number to call the Occupational Safety and Health Administration (OSHA). Kapanowski called the number the next day on the way to work, but was connected to the United States Department of Labor (DOL). Kapanowski asked a DOL agent about safety regulations for small businesses and expressed concern about the lack of COVID-19 safety protocols in her workplace. The DOL provided Kapanowski with a number for OSHA, but Kapanowski did not have time to call before the start of her shift.

That morning, Berschbach asked Kapanowski to talk to her coworkers about her concerns and to smooth things over. Berschbach required Kapanowski to stand in the middle of the common area and Kapanowski expressed concern that the other workers were not wearing masks or maintaining a six-foot distance from each other. She further noted that Berschbach had reprimanded her for using disinfectant. Berschbach told Kapanowski that if she had a problem, she should e-mail the governor. Kapanowski responded that she had already done so. Berschbach responded: "Sweet. I love Gretchen. I would love to have her in. She'd look and say, 'You girls rock. You're doing it right.' " Berschbach told Kapanowski to go sit in her office because Berschbach needed time to consider the situation. Approximately an hour later, Berschbach called Kapanowski into her office and terminated her employment because she was no longer a good fit for the company and was not good for morale. Berschbach also told Kapanowski that she would not contest an unemployment claim and that Kapanowski would receive her full 401(k).

Kapanowski filed this wrongful termination action, alleging that defendants discharged her in retaliation for engaging in protected activity under the WPA. Kapanowski alleged that she

engaged in protected activity when she reported an actual or suspected violation of the law to OSHA and her employer, and that she was terminated from her employment because she voiced her objections and reported a violation of the law.[1]

The circuit court summarily dismissed Kapanowski's complaint, concluding that she had not established a prima facie violation of the WPA. The court ruled that Kapanowski failed to inform defendants of her alleged protected activity and failed to establish a causal connection between any protected activity and her discharge. Specifically, the court noted that Kapanowski admitted that she did not tell defendants that she had placed calls to the health department or the DOL. Because defendants did not have notice of these calls, Kapanowski could only rely on her statement that she had e-mailed the governor. The court ruled that this comment did not support a WPA claim because the e-mail was sent three months earlier regarding Kapanowski's husband's employer. The court also found no causal connection between Kapanowski's comment about e-mailing the governor and her discharge.

Kapanowski appeals.

## II. ANALYSIS

We review de novo a lower court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim" and should be granted when after reviewing "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party," there remains "no genuine issue regarding any material fact" that could be sent to trial "and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citations omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted).

We also review de novo the lower court's interpretation of the WPA, *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014), and the circuit court's determination that a plaintiff has not established a prima facie case under the WPA. *Hays v Lutheran Social Servs of Mich*, 300 Mich App 54, 59; 832 NW2d 433 (2013). An action for retaliatory discharge in violation of the WPA is governed by MCL 15.362 as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state,

---

[1] Kapanowski also alleged that defendants violated Michigan's public policy by discharging her for objecting to acts she believed violated state law, but does not challenge the circuit court's dismissal of that claim on appeal.

-3-

or the United States to a public body, unless the employee knows that the report is false . . . .

The WPA was enacted to protect "employees who report a violation or suspected violation of state, local, or federal law." *Whitman v City of Burton*, 493 Mich 303, 312; 831 NW2d 223 (2013) (cleaned up). It "furthers this objective by removing barriers that may interfere with employee efforts to report those violations or suspected violations, thus establishing a cause of action for an employee who has suffered an adverse employment action for reporting or being about to report a violation or suspected violation of the law." *Id*.

Michigan courts analyze WPA claims under a burden-shifting framework. *Roulston v Tendercare (Mich) Inc*, 239 Mich App 270, 280-281; 608 NW2d 525 (2000). First, the plaintiff must establish a prima facie case of retaliatory discharge under the WPA "by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection exists between the protected activity and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate business reason for the discharge." *Roulston*, 239 Mich App at 281. If the defendant succeeds, the plaintiff must prove that the defendant's proffered reason "was only a pretext for discharge." *Id*.

The record evidence supports that Kapanowski was engaged in protected activity. She had contacted the county health department and the federal DOL in her attempt to make a report, and was "about to report" her concerns to OSHA. These calls were relevant to show that Kapanowski had a good-faith belief that defendants were violating COVID-19 protocols, which combined with the concerns she voiced at work and her statement that she had already e-mailed the governor, was sufficient to establish that she was about to report a violation or suspected violation of a law to a public body.

Kapanowski easily established the second element to support her prima facie claim—it is undisputed that Berschbach terminated Kapanowski's employment.

And contrary to the circuit court's ruling, Kapanowski did create a genuine issue of material fact that her protected activity triggered the termination decision. It is true that Berschbach did not know that Kapanowski had contacted the health department and DOL and was about to contact OSHA. However, Kapanowski did tell Berschbach that she had contacted the governor's office about her workplace safety concerns. Although Kapanowski's message to the governor did not pertain to defendants, Berschbach did not know that. The only conclusion that Berschbach could draw from the context of Kapanowski's statement was that Kapanowski had reported to the governor's office that defendants were not complying with emergency safety protocols put in place early in the COVID-19 pandemic. This was sufficient notice for a factfinder to determine that Berschbach—the person who made the termination decision—was on notice that Kapanowski was engaged in protected activity. See *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 257; 503 NW2d 728 (1993). See also *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 619; 566 NW2d 591 (1997) (holding that "[c]onfronting a supervisor with a threat of a report serves to promote the public policy of whistleblower statutes" and "such a threat should demonstrate that the employee has an actual intent to report the violation").

-4-

The evidence also supports that this report was the motivating factor behind Kapanowski's termination. Immediately after Kapanowski told Berschbach that she had already contacted the governor's office, Berschbach became upset. Berschbach indicated that she needed some time to think and returned to her office. Less than an hour later, Berschbach summoned Kapanowski to her office, informed her that she was ruining the morale in the office, and that her employment was terminated. "[A] temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). Berschbach's statements, in conjunction with the timing of the termination, create a genuine factual question that her termination of Kapanowski was motivated by her anger over Kapanowski reporting their company for COVID workplace safety violations.

Because the circuit court erroneously determined that Kapanowski had not established a prima facie case under the WPA, the court did not consider whether defendants articulated a legitimate business reason for Kapanowski's discharge or whether that proffered reason was mere pretext. "A plaintiff can prove pretext either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Roulston*, 239 Mich App at 281. Kapanowski made the required showing. In terminating Kapanowski's employment, Berschbach cited that Kapanowski was no longer a good fit for the company and negatively impacted morale. Berschbach made this judgment based on the subject matter of the confrontation between Berschbach and Kapanowski just before her termination. That topic was Kapanowski's complaints that defendants and her coworkers were violating COVID-19 workplace safety protocols. And Kapanowski advised Berschbach in that same conversation that she had reported her concerns to the governor. This evidence creates a question of fact whether a retaliatory reason more than likely motivated the discharge.

We vacate the order granting summary disposition and remand for continued proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Sima G. Patel

-5-