*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA RIVERA,

        Plaintiff-Appellee,

v

SVRC INDUSTRIES, INC.,

        Defendant-Appellant.

FOR PUBLICATION
April 4, 2019
9:00 a.m.

No. 341516
Saginaw Circuit Court
LC No. 16-031756-NZ

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

BOONSTRA, J.

Defendant appeals by leave granted[1] the trial court's denial of its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in this action alleging that defendant violated the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, and that defendant unlawfully retaliated against plaintiff in violation of Michigan public policy. We reverse and remand for entry of an order granting summary disposition in favor of defendant.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff was employed as the director of industrial operations at defendant SVRC Industries, Inc. from October 2015 to October 2016. On September 15, 2016, plaintiff conducted a disciplinary meeting with an employee, LS, who had presented with insubordination issues. According to plaintiff, LS made several statements during the meeting that plaintiff perceived to be threatening; specifically, he raised the possibility of a "revolution" in this country and alluded to the fact that he could operate a firearm, that he was not afraid to pull the trigger, and that he did not discriminate.

---

[1] *Rivera v SVRC Indus, Inc*, unpublished order of the Court of Appeals, entered February 1, 2018 (Docket No. 341516).

Plaintiff reported LS's statements to defendant's chief operating officer, Debra Snyder. Plaintiff asked Snyder whether she should report the incident to the police, and Snyder stated that she would apprise chief executive officer Dean Emerson of the situation before calling back with further instructions. After consulting with the company's attorney, Gregory Mair, Emerson instructed Snyder not to file a police report on defendant's behalf. Meanwhile, plaintiff sought advice from a friend at a different company, who told her to notify the police and "start a paper trail." Plaintiff then discussed the incident with Sylvester Payne, her "on and off" significant other, who served as the chairman of defendant's board of directors.

Plaintiff also communicated with Snyder about the incident by text message. In the text messages, plaintiff reasserted her concern and inquired about whether she should contact the police. Snyder informed plaintiff that Mair had advised against filing a police report on defendant's behalf. Plaintiff told Snyder that she had contacted Payne to discuss the incident, and Snyder responded by text message:

> Linda, Sylvester is not an employee of SVRC. He is a board member. Please be very careful with sharing confidential information about employees. If you want to file a personal protection order you can do so, which may mean filing a police report, but that is not what was advised by our attorney.

Plaintiff acknowledged that she was never discouraged by Snyder or anyone else from reporting LS's conduct to the police. Regardless, plaintiff never gave any indication that she was going to report the incident to the police, and apparently never took any action to do so.

Emerson instructed Mair to investigate the incident. Mair spoke with plaintiff, as well as other employees who were present at the meeting with LS, between September 22 and September 28, 2016. Defendant terminated LS's employment on October 3, 2016.

On October 4, 2016, plaintiff received notice that she was being permanently laid off from her position with defendant, effective October 6, 2016, for "budgetary and economic reasons." Plaintiff filed suit against defendant, claiming that defendant had violated MCL 15.362 of the WPA in two ways: (1) by retaliating against plaintiff when she was about to report LS's conduct to the police and (2) by retaliating against plaintiff when she reported LS's conduct to Mair. Plaintiff additionally claimed that defendant had unlawfully retaliated against her in violation of Michigan public policy. Defendant filed a motion for summary disposition under MCR 2.116(C)(10), which the trial court denied. This appeal followed. Following oral argument in this Court, we issued an order directing the parties to file supplemental briefs

> addressing whether plaintiff's communications with Mr. Mair constituted a "report" of a violation or suspected violation of law within the meaning of MCL 15.362. The parties need not address the status of Mr. Mair as a member of the State Bar of Michigan. Rather, the supplemental briefs should focus only on whether the communications in the context of this case constituted a "report" within the meaning of the statute.

The parties filed supplemental briefs in accordance with that order, and we have additionally considered the arguments presented in those briefs.

-2-

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Whether evidence establishes a prima facie case of retaliation under the WPA is a question of law that this Court also reviews de novo. *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 279; 608 NW2d 525 (2000).

Under MCR 2.116(C)(10), summary disposition is appropriate if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Motions for summary disposition under MCR 2.116(C)(10) test the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom*, 287 Mich App at 416. When evaluating motions brought under this subrule, a trial court must consider—in the light most favorable to the nonmoving party—the parties' affidavits, pleadings, depositions, admissions, and other documentary evidence. *Id.*, citing MCR 2.116(G)(5). Such evidence is required when judgment is sought under subrule (C)(10). MCR 2.116(G)(3)(b). Motions under subrule (C)(10) "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The nonmoving party may not rest upon its pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. If the nonmoving party fails to do so, the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120.

## III. ANALYSIS

Plaintiff's complaint alleged three claims: (1) retaliation in violation of the WPA as a result of plaintiff allegedly being about to report LS's conduct to the police; (2) retaliation in violation of the WPA as a result of plaintiff allegedly having actually reported LS's conduct to Mair; and (3) retaliation in violation of Michigan public policy as a result of plaintiff's alleged attempt to report LS's conduct to the police and by plaintiff's alleged refusal to conceal LS's supposed violation of Michigan's Anti-Terrorism Act, MCL 750.543a *et seq*. Defendant argues that the trial court should have granted summary disposition in its favor on all of these claims. We agree.

### A. WPA LEGAL PRINCIPLES

The WPA protects plaintiffs who report or are about to report violations or suspected violations of law undertaken by employers and coworkers. *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 403; 572 NW2d 210 (1998). Under MCL 15.362:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a

-3-

public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

The WPA "provides protection for two types of 'whistleblowers': (1) those who report, or about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or in a court action." *Henry v Detroit*, 234 Mich App 405, 409; 594 NW2d 107 (1999). A "type 1 whistleblower" is someone "who, on his own initiative, takes it upon himself to communicate the employer's wrongful conduct to a public body in an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the public body." *Id*. at 410. "Type 2 whistleblowers" are those who "participate in a previously initiated investigation or hearing at the behest of a public body." *Id*. In this case, plaintiff principally argues that she was a type 1 whistleblower, i.e., that she reported or was about to report a violation of the law to a public body.[2]

The parties do not dispute that plaintiff was an employee or that defendant was an employer under the act. A "public body" refers to any of the following:

(*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.

(*ii*) An agency, board, commission, council, member, or employee of the legislative branch of state government.

(*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal

---

[2] In her supplemental brief on appeal, plaintiff argues for the first time that she also engaged in protected activity by participating in an investigation conducted by Mair (i.e., that she was a Type 2 whistleblower). However, a fair reading of plaintiff's complaint does not reflect any such claim. Moreover, in opposing defendant's motion for summary disposition in the trial court, plaintiff made no such argument, and instead effectively disclaimed any such contention ("Plaintiff claims two (2) distinct acts constitute protected activity. First, Plaintiff was about to report a violation of law to the local police department. . . . Second, Plaintiff reported Mr. Summerfield's unlawful behavior to a licensed attorney, Gregory Mair.") We need not consider an issue that, although it could have been, was not raised before the trial court, but was instead raised for the first time on appeal in a supplemental brief. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Moreover, in speaking with Mair, plaintiff did not "participate in a *previously-initiated* investigation or hearing *at the behest of a public body*." *Henry*, 234 Mich App at 410 (emphasis added). To the contrary, and by her own admission, she participated in an interview at the direction of her *employer*, and did so only *after* she had already communicated her concerns to the employer. We therefore conclude in any event that plaintiff did not engage in protected activity under this prong of the WPA.

corporation, or a board, department, commission, council, agency, or any member or employee thereof.

(*iv*) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body.

(*v*) A law enforcement agency or any member or employee of a law enforcement agency.

(*vi*) The judiciary and any member or employee of the judiciary. [MCL 15.361(d)(*i*) through (*vi*).]

To survive summary disposition on a claim for retaliation in violation of the WPA, a plaintiff must establish a prima facie case. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16-17; 891 NW2d 528 (2016). This Court has outlined three elements a plaintiff must establish in order to carry his or her burden of making out a prima facie case for retaliation under the WPA:

(1) The employee was engaged in one of the protected activities listed in the provision.

(2) [T]he employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment.

(3) A causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. [*Wurtz v Beecher Metro Dist*, 495 Mich 242, 250-252; 848 NW2d 121 (2014).]

To establish a prima facie case, a plaintiff can rely on either direct or circumstantial evidence of retaliation. *Id*. at 17. Direct evidence of retaliation is evidence that, if believed, requires the conclusion that retaliatory animus was "at least a motivating factor in the employer's actions." *Id*. at 18 (citation omitted). Our Supreme Court has stated with regard to circumstantial evidence of retaliation that:

Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action. A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful [retaliation]. [*Debano-Griffin v Lake Co*, 493 Mich 167, 173, 176; 828 NW2d 634 (2013) (quotation marks and citation omitted).]

Consequently, circumstantial evidence of retaliation requires the application of the framework set forth in *McDonnell-Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). That is, where a plaintiff presents circumstantial evidence of retaliation, the burden then

shifts to the defendant to rebut the presumption of a causal connection by articulating a legitimate business reason for its adverse employment action. *McNeill-Marks*, 316 Mich App at 18. If the defendant offers such a reason, the burden shifts back to the plaintiff to show that a genuine issue of material fact still exists by showing that " 'a reasonable fact-finder could still conclude that the plaintiff's protected activity was a motivating factor for the employer's adverse action, i.e., that the employer's articulated legitimate reason was a pretext disguising unlawful animus.' " *Id.*, quoting *Debano-Griffin*, 493 Mich at 176 (quotation marks omitted). This Court has explained:

> "A plaintiff can establish that a defendant's articulated legitimate . . . reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." [*McNeill-Marks*, 316 Mich App at 18, quoting *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998) (ellipsis in original).]

## B. PLAINTIFF'S "ABOUT TO REPORT" CLAIM

Defendant argues that the trial court should have granted summary disposition in its favor on plaintiff's "about to report" claim under the WPA because plaintiff presented no evidence that she was about to report LS's conduct to the police. We agree.

An employee may satisfy the first element of the prima facie case analysis by demonstrating that he or she was "about to report" a suspected violation of law to a public body. *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 610; 566 NW2d 571 (1997). Our Supreme Court has noted that "*Webster*'s defines 'about' as '*on the verge of*' when followed by an infinitive, such as 'to leave,' or in this case, 'to report.' " *Shallal*, 455 Mich at 612, quoting *Random House Webster's College Dictionary* (1995) (emphasis added). When pursuing an "about to report" claim under the WPA, a plaintiff bears the burden of proving, by clear and convincing evidence, that he or she was on the verge of reporting a suspected violation of law. *Shallal*, 455 Mich at 611; MCL 15.363(4). However, the plaintiff's proof "need not consist of a concrete action to satisfy the 'about to report' element." *Shallal*, 455 Mich at 615.

The law does not require a plaintiff to explicitly state that he or she has decided to report a violation or suspected violation of the law in the immediate future in order to establish that she was "about to" report such activity. *Id.* at 620 n 9. However, " '[a]n employer is entitled to objective notice of a report or a threat to report by the whistleblower.' " *Roulston*, 239 Mich App at 279, quoting *Roberson v Occupational Health Ctrs of America, Inc*, 220 Mich App 322, 326; 559 NW2d 86 (1996) (quotation marks omitted).

In *Shallal*, 455 Mich at 621, our Supreme Court held that

> [the] plaintiff's express threat to the wrongdoer that she would report him if he did not straighten up, especially coupled with her other actions, was more than ample to conclude that reasonable minds could find that she was "about to report" a suspected violation of the law to the [Department of Social Services].

By "other actions," the Court was referring to the plaintiff having scheduled and attended meetings with her coworkers to discuss the reporting of their agency president's alcohol abuse and misuse of agency funds. *Id*. at 606, 613-614. The Court noted that the plaintiff had made an "*express* threat to her employer" that she would report him to the board of directors if he did not change, and that "[c]onfronting a supervisor with a threat of a report serves to promote the public policy of whistleblower statutes. Certainly such a threat should demonstrate that the employee has an actual intent to report the violation." *Id*. at 619.

In *Hays v Lutheran Social Servs of Mich*, 300 Mich App 54, 62-64; 832 NW2d 433 (2013), the plaintiff discussed a client's marijuana use with her supervisor, coworkers, and a Bay Area Narcotics Enforcement Team (BAYANET) official to inquire about the legal ramifications of knowing that someone was using illegal drugs and failing to report it. *Id*. at 57. When the BAYANET official asked if the plaintiff would like to make a report, the plaintiff declined. *Id*. The plaintiff's employment was terminated when the defendant, her employer, discovered that the plaintiff had breached a client confidentiality agreement by disclosing her client's drug use. *Id*. at 57-58. The plaintiff argued that the defendant had violated the WPA, claiming that she was about to report a violation or suspected violation of law. *Id*. at 62-64. However, this Court held that the plaintiff had failed to satisfy the protected activity element of her prima facie case because her inquiries about potential consequences did not indicate an affirmative intent to *actually* report her client's behavior. *Id*. at 63. Instead, "[h]er conversations demonstrate[d] only that while [the] plaintiff knew about the behavior and had a sufficiently long time to report the behavior, she declined to do so." *Id*. Moreover, the plaintiff in *Hays* never threatened to take further action, such that there was "no evidence that [the] defendant received objective notice that [the] plaintiff was about to report [her client's] behavior to a public body." *Id*. at 63-64.

In this case, plaintiff's conduct is more akin to that of the plaintiff in *Hays* than to that of the plaintiff in *Shallal*, 455 Mich at 621. Plaintiff did not, either explicitly or implicitly, threaten to report LS's conduct. Rather, while plaintiff's text messages and deposition testimony reveal that she believed that contacting the police was the correct course of action, the record shows only that she discussed with various people the option of filing a police report and conveyed her opinion. It does not demonstrate that, after her consultations, she had determined that filing a police report was still the best course of action or, more significantly, that she was on the verge of contacting law enforcement. See *Shallal*, 455 Mich at 612. Additionally, there is no evidence that defendant was ever put on notice that plaintiff was about to report LS's conduct. *Roulston*, 239 Mich App at 279.

For these reasons, plaintiff has failed to prove that a genuine issue of material fact existed regarding whether she had engaged in a protected activity by being about to report a violation or suspected violation of law. *Shallal*, 455 Mich at 610. Accordingly, the trial court erred by denying defendant summary disposition on this claim. MCR 2.116(C)(10); *Maiden*, 461 Mich at 120.

## C. PLAINTIFF'S "ACTUAL REPORT" RETALIATION CLAIM

Defendant also argues that the trial court erred by denying summary disposition in its favor on plaintiff's WPA claim premised on her communication with Mair. We agree.

As the trial court noted, practicing attorneys who are members of the State Bar of Michigan are considered members of a "public body" under MCL 15.361(d)(*iv*). *McNeill-Marks* 316 Mich App at 23. Based on that, the trial court concluded, albeit without further analysis, that when plaintiff discussed LS's conduct with Mair, plaintiff had engaged in protected activity. We conclude that the trial court's analysis did not go deep enough, and that the trial court erred in reaching that conclusion.

Although *McNeill* does hold that a licensed attorney is a member of a "public body" for purposes of the WPA, *id.*, it does not compel the conclusion that plaintiff's conversation with Mair was in this case a "report" of a violation (or suspected violation) of the law. For several reasons, we conclude that it was not. First, plaintiff did not "on [her] own initiative, take it upon [herself] to communicate the employer's wrongful conduct to a public body in an attempt to bring the, as yet hidden, violation to light." *Henry*, 234 Mich App at 410. Rather, plaintiff spoke with Mair at defendant's request.[3] In other words, when she spoke with Mair, plaintiff was not an "initiator" and did not "take it upon [herself]" to communicate with Mair. *Id.*[4]

Additionally, the trial court appears to have assumed that the nature of plaintiff's discussion with Mair was that of "reporting." We do not agree. Indeed, the information that plaintiff conveyed to Mair was the same as that which she had already directly communicated to defendant, and that information was already known to Mair by virtue of plaintiff's earlier communications with defendant itself.[5] As a consequence, the information was no longer "as yet hidden," *id.*, at the time of the communication with Mair. We conclude, in this context, that plaintiff's communications with Mair do not constitute "reporting" under the WPA.

As Justice ZAHRA noted in his dissent from the Court's denial of leave in *McNeill-Marks*, see *McNeill-Marks v MidMichigan Center-Gratiot*, 502 Mich 851, ___; 912 NW2d 181 (2018) (ZAHRA, J., dissenting), the term "report" is not defined in the WPA. Therefore, a court may consult a dictionary to determine the plain and ordinary meaning of the term. *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015). Although "report" has many definitions, we conclude that the definitions most applicable in the context of the WPA are "to make a charge against" or "to make known the presence, absence, condition, etc." of something. See *Random House Webster's College Dictionary* (2d ed), p 1120. These definitions comport

---

[3] Indeed, plaintiff affirmatively stated, both in her complaint and in her affidavit, that defendant had "required" her to meet with Mair.

[4] Our decision does not rest on the motivation behind plaintiff's communication. See *Whitman v City of Burton*, 493 Mich 303, 306, 313; 831 NW2d 223 (2013).

[5] In her complaint, plaintiff alleged that in meeting with Mair, she "again relayed" the information that she had previously conveyed to defendant. Similarly, in her affidavit, plaintiff described her conversation with Mair as "the same conversation I had with Ms. Snyder in my text messages to her," as a "reiteration," and as "again indicating" what she had previously conveyed to defendant directly. In her deposition, plaintiff also acknowledged that she conveyed the same information to Mair that she had earlier conveyed to Snyder.

with *Henry*'s characterization of a type 1 whistleblower. *Henry*, 234 Mich App at 410. In other words, under the WPA, a plaintiff "reports" a violation of the law when he or she "makes a charge" of illegality against a person or entity, or "makes known" to a public body pertinent information related to illegality. Plaintiff in this case did neither in her conversation with Mair. Her discussion with Mair cannot reasonably be seen as "charging" LS with illegal conduct, nor did plaintiff make anything known to Mair that he did not already know by virtue of plaintiff's earlier communications with defendant. We conclude that plaintiff at most "communicate[d] an illegality[6] to a person falling under the broad definition of 'public body' " and did not engage in protected activity under the WPA. *McNeill-Marks*, 502 Mich at ___ (ZAHRA, J., dissenting).

Further, although Mair may in general terms have been a member of a "public body" under *McNeill-Marks* by virtue of his profession, he was also acting as defendant's agent when plaintiff communicated with him. "A lawyer is an agent, to whom clients entrust matters, property, and information, which may be of great importance and sensitivity, and whose work is usually not subject to detailed client supervision because of its complexity." See 1 Restatement Law Governing Lawyers, 3d, Introductory Note, p 124. "Fundamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to him." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 557-558; 581 NW2d 707 (1998). Therefore, when plaintiff communicated with Mair at defendant's direction, she was, in essence, again communicating with Mair's principal, i.e., defendant. Plaintiff's communication with Mair cannot reasonably be termed "an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation," *Henry*, 234 Mich App at 410, when (1) plaintiff had already imparted the information directly to defendant, (2) defendant had already shared the information with Mair, and (3) in further speaking with Mair, plaintiff merely repeated the same information to defendant's agent. Consequently, plaintiff's communication with Mair was not a "reporting" of information under the WPA.

To conclude otherwise would be to transform what was a non-actionable communication (i.e., plaintiff's communication with defendant, which is not a "public body" under the WPA) into an actionable one merely because, at defendant's behest, plaintiff re-conveyed the same information to defendant's attorney-agent. We cannot endorse such a strained reading of the "reporting" requirement of the protected activity element under the WPA.

The trial court therefore erred by concluding that plaintiff had engaged in protected activity by communicating with Mair. But even if we were to find otherwise, we would hold that the trial court erred by concluding that plaintiff carried the burden of showing a causal connection between her *communication with Mair* and the resulting adverse employment action. As stated earlier, plaintiff has admitted that she told Mair what he, and defendant, already knew. Plaintiff offered no evidence before the trial court establishing a causal connection between that

---

[6] Again, and while it is not critical to our analysis, plaintiff in this case communicated information about statements that she perceived to be threatening in nature; it is not clear that she communicated information about an "illegality" or even a "suspected illegality."

communication, which was initiated at defendant's request, and her termination. Temporal proximity, without more, is insufficient to prove a causal connection between the protected activity and adverse employment action. *Debano-Griffin*, 493 Mich at 177. Plaintiff's claims under the WPA are essentially that her reaction to the incident with LS led to defendant's decision to terminate her; however, even if true, she presented no evidence even suggesting that any "reporting" she did to Mair played a role in that decision. Indeed, plaintiff chiefly argued below, and argues on appeal, that defendant's proffered legitimate business reason for her termination was pretextual. But defendant did not even need to offer a legitimate business reason for her termination until plaintiff carried her initial burden with respect to causation. *McNeill-Marks*, 316 Mich App at 18. Because there was no evidence of causation, as between her communication with Mair and her termination, plaintiff failed to carry that burden, and therefore no presumption of retaliation arose. Absent a presumption of retaliation, it simply matters not whether defendant's offering of "budgetary and economic reasons" was factually supported. "[A] 'plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " *Debano-Griffin*, 493 Mich at 180, quoting *Hazle*, 464 Mich at 476.

For all of these reasons, we conclude that the trial court erred by denying summary disposition in favor of defendant on plaintiff's claim under the WPA based on her communication with Mair. MCR 2.116(C)(10); *Maiden*, 461 Mich at 120.

## D. UNLAWFUL RETALIATION IN VIOLATION OF MICHIGAN PUBLIC POLICY

Defendant also argues that the trial court erred when it denied summary disposition in its favor on plaintiff's claim of unlawful retaliation in violation of public policy. Again, we agree. Termination of at-will employment is typically proscribed by public policy in Michigan in three situations: "(1) 'adverse treatment of employees who act in accordance with a statutory right or duty,' (2) an employee's 'failure or refusal to violate a law in the course of employment,' or (3) an 'employee's exercise of a right conferred by a well-established legislative enactment.' " *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008), quoting *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982). However, where a statute already exists that prohibits a particular adverse employment action, the statute provides the exclusive remedy, and claims under Michigan public policy cannot be maintained. *Kimmelman*, 278 Mich App at 573.

To that end, "[t]he remedies provided by the WPA are exclusive and not cumulative. Thus, when a plaintiff alleges discharge in retaliation for engaging in activity protected by the WPA, [t]he WPA provides the exclusive remedy for such retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity." *McNeill-Marks*, 316 Mich App at 25 (quotation marks and citation omitted; second alteration in original).

Plaintiff's "public policy" claim that she was terminated because she "attempted to report" LS's conduct to the police or "refused to conceal" LS's alleged violations of the Anti-Terrorism Act arises from the same activity as do her claims under the WPA. See MCL 15.362; see also *McNeill-Marks*, 316 Mich App at 25. Indeed, a refusal to conceal unlawful conduct from a public body is not distinguishable from reporting or being about to report that conduct to

a public body because there is "no logical distinction between the refusal to conceal and the report by which that refusal manifested itself; rather, the two are flip sides of the same coin." *Id.* at 26. Accordingly, the trial court erred by denying summary disposition on plaintiff's claim for retaliation in violation of public policy because they were duplicative of her claims under the WPA. MCR 2.116(C)(10); *Maiden*, 461 Mich at 120.[7]

We reverse and remand for entry of an order granting summary disposition in favor of defendant. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Deborah A. Servitto

---

[7] We are not persuaded by plaintiff's contention that her public policy claim is broader that her WPA claims because it "could include" a refusal to conceal LS's conduct from Payne or others who are not public bodies. First, not only is there no evidence that plaintiff "refused to conceal" LS's conduct from Payne or others, there is instead evidence that plaintiff actually disclosed that conduct to them. There is, moreover, no evidence in the record that defendant directed plaintiff not to disclose LS's conduct to (or that plaintiff "refused" to conceal it from) anyone. Finally, Snyder's caution to plaintiff (after she had disclosed information to Payne) to "[p]lease be very careful with sharing confidential information about employees" wholly fails to provide any basis for plaintiff's public policy claim.