*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA TYLER,

　　　　　Plaintiff-Appellant,

v

KALAMAZOO PUBLIC SCHOOLS,

　　　　　Defendant-Appellee.

UNPUBLISHED
January 18, 2024

No. 363249
Kalamazoo Circuit Court
LC No. 2022-000122-CZ

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Plaintiff, Patricia Tyler, appeals by right the trial court's order granting defendant, Kalamazoo Public Schools (KPS), summary disposition under MCR 2.116(C)(10). She contends that she established a genuine issue of material fact whether KPS violated Michigan's Persons with Disabilities Civil Rights Act[1] (PWDCRA), MCL 37.1101 *et seq*., and Michigan's Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. She also argues that the trial court erred by ruling that her constitutional claims were moot. We affirm.

## I. BACKGROUND

This matter arose after KPS declined to give plaintiff an exemption to its mask mandate. In the 2021-2022 school year, KPS's Board of Education (the Board) adopted a mask policy in response to the then-ongoing COVID-19 pandemic. The Board resumed in-person instruction for its approximately 13,000 students and required them and the KPS employees to wear masks in its schools in all public spaces, including classrooms.

Plaintiff is a tenured special education teacher employed by KPS and she worked at the Hillside Middle School at times relevant to this case. In November 2021, plaintiff requested and KPS granted her a seven-day leave of absence under the Family and Medical Leave Act (FMLA),

---

[1] This act was formerly known as the Handicappers Civil Rights Act. *Chmielewski v Xermac, Inc*, 457 Mich 593, 595; 580 NW2d 817 (1998).

29 USC 2601 *et seq.* Following the leave, plaintiff returned to work and requested an accommodation in relation to the mask mandate. In support of her request, plaintiff submitted two notes from her physician, Dr. Joseph A. Bruno, dated November 4, 2021. The first note stated that "[patient] should have ample mask breaks when safely able to do so, due to anxiety and overheating." The second note explained that Dr. Bruno treated plaintiff for anxiety and that she could return to work on November 9, 2021. Neither of Dr. Bruno's notes stated that plaintiff should be exempt from wearing a mask during work, or intimated that she could not wear a mask, or diagnosed a disability that required anything more than periodic breaks from mask wearing when safely able to do so.

On November 10, 2021, Dr. Patricia Ponto, a licensed psychologist, sent an e-mail to KPS Compliance Specialist, Daniel Emmons, to affirm that plaintiff took time off work related to her anxiety. Dr. Ponto recommended that plaintiff take an additional day off. Dr. Ponto further stated in the e-mail that plaintiff "may require further time off as things proceed, but I am hopeful that this break has been in her best interests and that she is ready to return to school at this time." Dr. Ponto's e-mail made no reference to additional accommodations. KPS adopted and implemented Dr. Bruno's recommendation that plaintiff receive breaks from wearing a mask between classes and during her lunch break.

In February 2022, the Michigan Department of Health and Human Services (DHHS) issued guidance lifting a mask advisory in indoor public settings including schools. The Center for Disease Control (CDC) removed its mask requirement for public transportation on February 25, 2022. A week later, on March 4, 2022, plaintiff e-mailed KPS Assistant Superintendent of Human Resources, Sheila Dorsey-Smith, to request a mask exemption. In the e-mail, plaintiff stated:

> In light of the rapidly changing Coronavirus data, I would like to ask for a mask exemption effective immediately based on recommendations from: Kalamazoo County Health & Community Services, Michigan Department of Health and Human Services, The CDC, The Kalamazoo Judge that halted the mandate for Comstock Schools, and a note from my personal physician submitted to Dan Emmons on November 10, 2021.

Plaintiff attached Dr. Bruno's November 4, 2021 note to her e-mail, but she provided no other documentation to support her request for an exemption from wearing a mask.

Assistant Superintendent Dorsey-Smith denied plaintiff's mask exemption request, and in an e-mail written response on March 17, 2021, noted that KPS already provided plaintiff an accommodation. Assistant Superintendent Dorsey-Smith further stated,

> If you cannot wear a mask and you have supporting documentation from a doctor, you may use sick leave as long as you have the medical documentation to do so. If that document doesn't exist, you may request an unpaid leave. Further, you may chose [sic] to retire or resign.

The e-mail directed plaintiff to submit medical documentation to KPS's compliance specialist.

The record indicates that on March 15, 2022, plaintiff filed a complaint for declaratory and injunctive relief against KPS, asserting three counts: (1) KPS exceeded its statutory authority when

it promulgated and enforced a mask mandate, (2) the Michigan Revised School Code did not authorize a mask mandate, and (3) KPS ignored plaintiff's medical exemption from her doctor. Plaintiff also filed an ex parte emergency motion for a temporary restraining order, but the trial court denied it.[2]

On March 17, 2022, Assistant Superintendent Dorsey-Smith received a report that plaintiff refused to wear a mask in the presence of her students in her classroom and in common areas in the school. The report stated further that plaintiff refused to allow her students with special needs into her classroom to receive services on March 16, 2022, and she failed to report to any of her coteaching classes. Based on this report, Assistant Superintendent Dorsey-Smith placed plaintiff on paid administrative leave pending an investigation. Assistant Superintendent Dorsey-Smith spoke with plaintiff, who admitted that she did not wear a mask "because [she] didn't want to." Assistant Superintendent Dorsey-Smith issued plaintiff a letter of reprimand for insubordination, and warned that "any further actions of insubordination or misconduct will result in additional disciplinary action, up to and including discharge."

Plaintiff filed an amended complaint on May 2, 2022, in which she alleged 10 counts against KPS including: (1) violation of the PWDCRA through disability discrimination, (2) violation of the WPA, (3) KPS exceeded its statutory authority when it promulgated and enforced a mask mandate, (4) the Michigan Revised School Code did not authorize a mask mandate, (5) KPS ignored plaintiff's medical exemption from her doctor, (6) KPS's mask mandate violated the constitutional right to bodily integrity, (7) KPS's mask mandate violated the constitutional right to equal protection of the law, (8) KPS's mask mandate violated the constitutional right to privacy and liberty, (9) KPS's mask mandate violated plaintiff's state due-process rights to liberty and privacy, and (10) KPS's mask mandate violated the nondelegation doctrine.

After filing this lawsuit, plaintiff served the remainder of the school year and received her full compensation. Plaintiff received an "effective" evaluation for her performance during the 2021-2022 school year.[3] KPS rescinded its mask mandate on May 26, 2022. The school district indicated it chose to continue its mask mandate until that date out of concern that students and staff could spread COVID-19 after the school community returned from spring break.

On July 28, 2022, KPS moved for summary disposition, asserting that no genuine issue of material fact existed regarding plaintiff's claims under the PWDCRA and the WPA. Further, KPS asserted that the remainder of plaintiff's constitutional claims were moot because KPS had rescinded its mask mandate. Plaintiff opposed KPS's motion and submitted an affidavit from her psychologist, Dr. Ponto, which stated that she diagnosed plaintiff with adjustment disorder with anxiety and depression and treated her since 2018 to help her cope "with anxiety, stress, frustration, and depression [plaintiff] has experienced in the last few years, largely as [a] result of difficulties

---

[2] The record is unclear whether plaintiff properly served process on KPS. KPS's counsel, however, entered an appearance on March 22, 2022, and filed defendant's opposition brief to plaintiff's motion for injunctive relief.

[3] Plaintiff accepted another teaching assignment from KPS for the 2022-2023 school year and transferred to another school within the district.

at school." Dr. Ponto attested that plaintiff "struggled with wearing a mask because of the physical symptoms that are related to her anxiety—she struggles to breathe, becomes congested, and experiences some claustrophobia. Her anxiety about the mask has interfered with her sleep." Dr. Ponto also attested that plaintiff "worked hard to find masks that enabled her to breathe more easily, but still found wearing the mask all day, every day to be very, very difficult and stress inducing."

The trial court granted KPS summary disposition regarding plaintiff's claims under the PWDCRA and the WPA and dismissed the remainder of plaintiff's claims as moot. Plaintiff now appeals.

## II. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition under MCR 2.116(C)(10). *Dressel v Ameribank*, 468 Mich 557; 561; 664 NW2d 151 (2003). Under MCR 2.116(C)(10), a party is entitled to summary disposition when the evidence does not present a genuine issue of material fact. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2021) (quotations marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted). This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). This Court does not make factual findings or weigh credibility. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004). We review issues of law de novo. *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000).

This case also involves issues of statutory interpretation. We review de novo a trial court's statutory interpretation. *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 250; 632 NW2d 126 (2001). "When interpreting a statute, the primary rule of construction is to discern and give effect to the Legislature's intent, the most reliable indicator of which is the clear and unambiguous language of the statute." *Perkovic v Zurich Ins Co*, 500 Mich 44, 49; 893 NW2d 322 (2017). Such language must be enforced as written, "giving effect to every word, phrase, and clause." *Id*. "The determination whether evidence establishes a prima facie case under the WPA is a question of law that this Court reviews de novo." *Hayes v Lutheran Social Servs of Mich*, 300 Mich App 54, 59; 832 NW2d 433 (2013) (quotation marks and citation omitted). We review de novo issues involving mootness. *Flynn v Ottawa Co Dep't of Pub Health*, ___ Mich App ___, ___; ___NW2d ___ (2022) (Docket No. 359774); slip op at 4.

## III. ANALYSIS

### A. PLAINTIFF'S PWDCRA CLAIMS

Plaintiff raised two claims under the PWDCRA: that KPS engaged in disability discrimination and failed to accommodate plaintiff's disability. Because plaintiff did not satisfy

-4-

her initial burden of demonstrating that her mental condition satisfied the definition of disability set forth in the PWDCRA, the trial court properly granted KPS summary disposition on this issue.

Under the PWDCRA, an employer may not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(b). A discrimination claim under the PWDCRA requires a plaintiff to "show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Peden v Detroit*, 470 Mich 195, 204; 680 NW2d 857 (2004) (quotation marks and citation omitted; alterations in original). Respecting a failure-to-accommodate claim, MCL 37.1102(2) provides that, "[e]xcept as otherwise provided in article 2 [MCL 37.1201 *et seq.*], a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." Both claims require the plaintiff to make a threshold showing that she is disabled for purposes of the PWDCRA. See *Peden*, 470 Mich at 204 (listing the requirements of a prima facia claim for discrimination under the PWDCRA); *Hall v Hackley Hosp*, 210 Mich App 48, 53-54; 532 NW2d 893 (1995) (listing the requirements for a failure-to-accommodate claim under the PWDCRA). "The plaintiff bears the burden of proving a violation of the PWDCRA." *Peden*, 470 Mich at 204.

"[I]n interpreting provisions of the [PWDCRA], analogous federal precedents are persuasive, although not necessarily binding." *Chmielewski v Xermac, Inc*, 457 Mich 593, 601; 580 NW2d 817 (1998). This Court and our Supreme Court have noted that the PWDCRA shares the same purpose and uses similar definitions as the federal Americans with Disabilities Act (ADA), and therefore, we may look to federal ADA cases for guidance. See *id*. at 602; *Stevens v Inland Waters, Inc*, 220 Mich App 212, 216-218; 559 NW2d 6 (1996). Our Supreme Court, however, has cautioned that the ADA and PWDCRA are not identical and that the PWDCRA should not be assumed to outright parallel the ADA. *Peden*, 470 Mich at 217.

The PWDCRA in relevant part defines the term "disability" as:

> (*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

> (A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion. [MCL 37.1103(d)(*i*)(A).]

A "person with a disability" or "persons with disabilities" is "an individual who has 1 or more disabilities." MCL 37.1103(h). In the employment context, "unrelated to the individual's ability" means that "with or without accommodation, an individual's disability does not prevent the individual from" "performing the duties of a particular job or position." MCL 37.1103(l)(*i*).

"[N]ot every impairment rises to the level of a disability under the PWDCRA." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 474; 606 NW2d 398 (1999). Instead, the plaintiff must show that her mental disability "substantially limit[s] a major life activity" but does not "prevent the disabled individual from performing the duties of a particular job." *Peden*, 470 Mich at 204. To determine if a plaintiff is disabled for purposes of the PWDCRA, this Court follows the three-step process borrowed from the ADA for determining whether a plaintiff has a disability:

> First, we consider whether respondent's complaint was a physical [or mental] impairment. Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity. [*Chiles*, 238 Mich App at 474 (alternations in original omitted), quoting *Bragdon v Abbott*, 524 US 624, 631; 118 S Ct 2196; 141 L Ed 2d 540 (1998).]

Under the ADA, "major life activities" "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 USC 12102(2)(A). When the alleged major life activity is "working," "the inability to perform a particular job does not constitute a substantial limitation." *Chiles*, 238 Mich App at 478. "Nonwork major life activities are examined in light of whether the person can perform the normal activities of daily living." *Lown v JJ Eaton Place*, 235 Mich App 721, 728; 598 NW2d 633 (1999). The alleged "substantial limitation" must relate to one of these major life activities. *Chiles*, 238 Mich App at 478. "To determine whether an individual is substantially limited, a court considers (i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or expected permanent or long-term effect." *Id.* at 479. The limitation should be evaluated as of the time of the challenged employment decision. *Michalski v Reuven Bar Levav*, 463 Mich 723, 735; 625 NW2d 754 (2001).

In this case, we first note that plaintiff asserted that her anxiety diagnosis constitutes a disability under the PWDCRA. There is no dispute between the parties that anxiety may constitute a mental impairment. For purposes of this appeal, we agree that it is possible for an anxiety disorder to constitute a disability under the act. Plaintiff established that she had an anxiety disorder as evidenced by Dr. Ponto's diagnosis as set forth in her affidavit. Dr. Bruno's first November 4, 2021 note that she provided KPS when she first requested a mask accommodation also indicated that she experienced anxiety. Such evidence presented to the trial court established a genuine issue of material fact whether she had a mental impairment. Second, plaintiff asserted that major life activities were impacted by her anxiety, including sleeping and breathing. These activities constitute major life activities. See 42 USC 12102(2)(A). Therefore, plaintiff established a genuine issue of material fact whether her anxiety impaired major life activities of breathing and sleeping.

Beyond asserting that she has a mental impairment that affects her sleep and breathing, plaintiff failed to articulate how her anxiety substantially limited those activities, including the nature and severity of the impairment, the duration of the impairment, or the permanency or long-term effect of the impairment. See *Chiles*, 238 Mich App at 479. In her amended complaint,

plaintiff generally alleged that she had a medical exemption to wearing a mask signed by a doctor. She alleged that she has anxiety that "causes breathing issues and issues of concentrating" that are "worsened when wearing a mask." Close analysis of Dr. Bruno's note on which plaintiff relied to seek an exemption from the mask mandate, however, does not indicate that the doctor ordered or even intimated that plaintiff should not and could not wear a mask.

The record indicates that, in November 2021, KPS granted plaintiff a leave of absence under the FMLA. After returning from medical leave, plaintiff requested a mask accommodation and KPS provided her accommodations including the ability to remove her mask during breaks and lunch. When plaintiff asked for accommodation, she provided Dr. Bruno's note that read that "[patient] should have ample mask breaks when safely able to do so due to anxiety and overheating." A second note explained that Dr. Bruno treated plaintiff for anxiety and that she was able to return to work on November 9, 2021. After this request, plaintiff seemingly worked without issue until March 2022. Following her return to work, plaintiff used very little sick time and personal time, including using neither after her return from mid-November through February 1, 2022. On March 4, 2022, when she asked for a mask exemption, she stated in her e-mail: "In light of the rapidly changing Coronavirus data, I would like to ask for a mask exemption effective immediately based on recommendations from [the county health department, DHHS, the CDC, a Kalamazoo judge's ruling, and a note from her personal physician]." She attached to this request Dr. Bruno's note but provided no additional documentation that established that she needed an exemption from mask wearing.

The record evidence provided to the trial court did not establish a genuine issue of material fact. The record evidence, including the doctor's notes, does not explain how wearing a mask induced anxiety that substantially limited her work, sleep, or breathing. Plaintiff's evidence did not explain how plaintiff's anxiety impacted her sleep or breathing, failed to describe how these life activities were interrupted, failed to establish the nature and severity of the impairment, failed to intimate the duration or expected duration of the impairment, nor did the evidence establish that such impairment is permanent or expected to be permanent or have a long-term effect.

In response to KPS's motion for summary disposition, plaintiff provided an affidavit from Dr. Ponto. That affidavit did not express how any major life activities were substantially limited. The affidavit states that plaintiff "struggled with wearing a mask because of the physical symptoms that are related to her anxiety—she struggles to breathe, becomes congested, and experiences some claustrophobia. Her anxiety about the mask has interfered with her sleep." These statements do not establish a genuine issue of material fact whether a major life activity was substantially limited. The evidence on which plaintiff relied did not establish how these major life activities were impacted, the nature and severity of the impairment, the duration or expected duration of the impairment, or the permanency or expected permanency or long-term effect. No indication is made of the extent that plaintiff's anxiety affected her major life activities.

Because plaintiff failed to demonstrate with admissible evidence the extent that her major life activities were impaired, plaintiff failed to establish a genuine issue of material fact whether she is disabled for purposes of the PWDCRA. Therefore, the trial court did not err by ruling that plaintiff failed to establish the existence of a genuine issue of material fact regarding plaintiff's disability status.

## B.  PLAINTIFF'S WPA CLAIM

Plaintiff next contends that she established a genuine issue of material fact regarding retaliation under the WPA because she presented evidence that KPS placed her on paid leave and issued a letter of reprimand after she filed a lawsuit in response to a purported violation of the PWDCRA.  We disagree.

"The determination whether evidence establishes a prima facie case under the WPA is a question of law that this Court reviews de novo." *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 278; 608 NW2d 525 (2000).  "The WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body." *Anzaldua v Neogen*, 292 Mich App 626, 630; 808 NW2d 804 (2011).  The WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.  [MCL 15.362.]

"The underlying purpose of the WPA is protection of the public." *Anzaldua*, 292 Mich App at 631. The plaintiff bears the burden of establishing a prima facie case under the WPA, by showing that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003).

Under the first element, a plaintiff engages in protected activity when he or she "(1) reports to a public body a violation of the law, a regulation, or a rule, (2) is about to report such a violation to a public body, or (3) is being asked by a public body to participate in an investigation." *Hays*, 300 Mich App at 59 (citations omitted).  To establish the second element, "the plaintiff must demonstrate one of the specific adverse employment actions listed in the WPA." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 252 n 14; 848 NW2d 121 (2014).[4]  The prohibited actions include "discharge[ing], threaten[ing], or otherwise discriminat[ing] against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment."  MCL 15.362.  Under the third element "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-

---

[4] Our Supreme Court has criticized using the phrase "adverse employment action" in the context of the WPA because the statute specifically delineates certain conduct that is narrower than the general term "adverse employment action" that is used in other areas of employment law.  *Wurtz*, 495 Mich at 252 n 14.

based retaliation is claimed." *West*, 469 Mich at 186. The "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Id*. "A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence." *Shaw v Ecorse*, 283 Mich App 1, 14; 770 NW2d 31 (2009).

Plaintiff established the first element of her WPA claim. Plaintiff filed her complaint in this case on March 15, 2022, against KPS asserting that it denied her an accommodation for her disability. She alleged that she engaged in protected activity by reporting a violation of law to a public body. See *Hays*, 300 Mich App at 59. The trial court is a public body for purposes of the act. MCL 15.361(d)(*vi*) (defining "public body" to include the "judiciary and any member or employee of the judiciary"). Further, an allegation that KPS violated the PWDCRA by failing to accommodate a disability constitutes a suspected violation of the law. See MCL 37.1210.

KPS argues that plaintiff's claim actually derives from plaintiff's own employment grievances and personal objections to the school district's mask mandate. KPS cites *Shallal v Catholic Soc Serv of Wayne Co*, 455 Mich 604, 621; 566 NW2d 571 (1997), for the proposition that "[t]he primary motivation of an employee pursuing a whistleblower claim must be a desire to inform the public on matters of public concern, and not personal vindictiveness." Our Supreme Court, however, more recently explained:

> Nothing in the statutory language of the WPA addresses the employee's motivation for engaging in protected conduct, nor does any language in the act mandate that the employee's primary motivation be a desire to inform the public of matters of public concern. Rather, the plain language of MCL 15.362 controls, and we clarify that a plaintiff's motivation is not relevant to the issue whether a plaintiff has engaged in protected activity and that proof of primary motivation is not a prerequisite to bringing a claim. To the extent that *Shallal* has been interpreted to mandate those requirements, it is disavowed. [*Whitman v Burton*, 493 Mich 303, 306; 831 NW2d 223 (2013).]

Therefore, plaintiff established the first element of her claim, that she engaged in protected activity.

Respecting the second element, plaintiff has failed to establish a genuine issue of material fact that KPS subjected her to discharge, threat, or otherwise discriminated against her for purposes of the WPA. Plaintiff contends that her receipt of a letter of reprimand and placement on paid leave constituted discrimination. Other than citing these facts, plaintiff leaves us to guess how these acts resulted in discrimination for purposes of the WPA.

The record establishes that KPS placed plaintiff on paid administrative leave on March 17, 2022, pending the outcome of an investigation into plaintiff's refusal to wear a mask in the presence of students in her classroom and common areas in the school, refusal to allow students with special needs on her caseload into her classroom to receive services, and failure to report to any of her coteaching classes. The letter essentially indicated that an investigation would commence to determine if plaintiff violated the KPS mask mandate and failed to perform her job duties. Plaintiff met with Assistant Superintendent Dorsey-Smith and admitted that she did not wear a mask because she did not want to do it. Her admission indicated that plaintiff intentionally disregarded and refused to comply with the KPS mask mandate. Assistant Superintendent Dorsey-

Smith issued plaintiff a written letter of reprimand following their discussion. The letter of reprimand stated "any further actions of insubordination or misconduct will result in additional disciplinary action, up to and including discharge." No additional facts were provided how the letter of reprimand and paid leave affected the terms or conditions of plaintiff's employment. Plaintiff was not terminated from her position, threatened with termination, or threatened with other action. KPS paid her full compensation for the year. Plaintiff continued her employment with the school district the remainder of that year and received an assignment at a school in the district for the next year. Plaintiff did not plead and the evidence she relied upon did not establish that KPS's actions had an adverse effect on her such that her compensation, terms, conditions, location, or privileges of employment were affected. See *Wurtz*, 495 Mich at 252 n 14. Accordingly, plaintiff has failed to establish the second element of her WPA claim.

Regarding the third element, plaintiff has failed to establish a genuine issue of material fact that a causal connection existed between a purported protected activity and discrimination. Plaintiff states that she filed the underlying action on March 15, 2022, was placed on administrative leave on March 17, and received the letter of reprimand on March 24, 2022. Plaintiff merely presents a timeline of events but leaves us to guess the correlation between the purported protected activity and alleged discrimination. She provides no additional evidence to establish a temporal connection between her filing the lawsuit and KPS placing her on paid administrative leave or issuance of the reprimand which the record indicates resulted from admitted insubordination. A plaintiff must plead and prove more than a temporal connection to establish a genuine issue of material fact under this element. See *West*, 469 Mich at 186.[5]

In sum, plaintiff failed to establish a genuine issue of material fact regarding two of the three elements of her WPA claim. The trial court, therefore, properly granted defendant summary disposition of plaintiff's WPA claim.

## C. MOOTNESS

In addition to her claims under the PWDCRA and the WPA, plaintiff alleged multiple constitutional claims. The trial court ruled that KPS's rescission of its mask mandate in May 2022, rendered these claims moot and dismissed them. Plaintiff contends that the trial court erred by ruling that her claims were moot because KPS did not concede the wrongfulness of its conduct and did not disavow reinstituting a mask mandate in the future. We conclude that the trial court did not err by concluding that plaintiff's claims were rendered moot under the circumstances presented in this case.

"The question of mootness is a threshold issue that a court must address before it reaches the substantive issues of a case." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). An issue is moot when an event occurs that renders it impossible for the reviewing court

---

[5] Plaintiff raised the additional argument that the trial court violated her right to a jury trial by granting summary disposition of her claims under the PWDCRA and the WPA because she made a claim for compensatory damages. We disagree. Summary disposition does not violate a party's right to a jury trial when there are no genuine issues of material fact for the jury. *People's Wayne Co Bank v Wolverine Box Co*, 250 Mich 273, 281; 230 NW 170 (1930).

to grant relief. *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 406; 834 NW2d 878 (2013). This Court may decline to consider matters that have become moot. *Driver v Naini*, 287 Mich App 339, 355; 788 NW2d 848 (2010), aff'd in part and rev'd in part on other grounds 490 Mich 239 (2011).

In *Adams v Parole Bd*, 340 Mich App 251, 259; 985 NW2d 881 (2022), this Court recently explained:

> This Court's duty is to consider and decide actual cases and controversies. Generally, this Court does not address moot questions or declare legal principles that have no practical effect in a case. Mootness occurs when an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy. There is an exception, however, when an issue is publicly significant, likely to recur, and yet likely to evade judicial review. [Quotation and citations omitted.]

"The mootness doctrine is not inflexible given that there are several exceptions to the general rule." *Turunen v Dir of Dep't of Nat'l Resources*, 336 Mich App 468, 480; 971 NW2d 20 (2021) (citation omitted).

In this case, KPS rescinded its mask mandate on May 26, 2022. Because KPS's mask mandate is no longer in effect, there is no pertinent relief that we can grant on appeal and any judgment would have no practical legal impact on the existing controversy. Plaintiff asserts that KPS's voluntary cessation permits this Court to provide relief because KPS did not concede the wrongfulness of its conduct and did not disavow reinstituting a mask mandate in the future. Plaintiff argues that this case should not be considered moot under an exception recognized in federal law called the "voluntary cessation doctrine" which provides:

> "[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." [*Ed Subscription Servs, Inc v American Ed Servs, Inc*, 115 Mich App 413, 430; 320 NW2d 684 (1982) (alteration in original), quoting *United States v WT Grant Co*, 345 US 629, 632; 73 S Ct 894, 897; 97 L Ed 1303 (1953).]

Plaintiff argues that we should adopt and apply this doctrine in this case because KPS rescinded its mask mandate after she filed her complaint. The record does indicate that KPS's rescission occurred two months after she instituted her lawsuit. That alone, however, is not dispositive.

A panel of this Court recently addressed challenges to a school district's mask policies and held that rescission of their policies rendered the plaintiffs' claims moot. In *EB by Next Friend Baker v Watervliet Pub Sch*, unpublished per curiam opinion of the Court of Appeals, issued May 4, 2023 (Docket No. 361206), the parents of students who attended Watervliet schools

challenged a mask requirement implemented in fall 2021. The Berrien County Health Department rescinded its mask policy in September 2021, but the defendant left its mask policy in place until February 2022. The plaintiffs filed their challenge to the mask policy in January 2022. The decision to rescind the school districts' mask policy coincided with improving COVID-19 circumstances and new guidance from the DHHS issued in February 2022. The defendant moved for summary disposition, asserting that the plaintiffs' claims were moot in light of the rescinded policy. *Id*. at 1-2.

The panel held that the plaintiffs' claims were moot and that the exceptions for voluntary cessation and "likely to recur, yet evading review" did not apply. First, in examining voluntary cessation, the panel acknowledged that the school districts did not concede that they lacked the authority to require mask usage, nor did the school districts assert that they would not reimpose a future mask policy if necessary. The panel further acknowledged that the school districts' policy may be an issue of public interest. In contrast, and more compelling to the panel, the facts of the case did not indicate that the school districts withdrew the mask policy in response to the plaintiffs' lawsuit. Instead, the school districts rescinded their policies in light of improving COVID-19 circumstances and guidance from the DHHS. The panel concluded that the voluntary cessation exception did not apply. *Id*. at 2-4.

The panel likewise rejected that the exception for "likely to recur, and yet likely to evade judicial review" applied. The panel explained that the school districts' authority to impose a mask policy was potentially an issue of public significance, but there was no reasonable expectation at the time of that case that the school districts would reinstate a mask mandate. Such conjecture was speculative. Further, if another mask mandate was implemented, it was unlikely that it would be so short as to evade review. *Id*. at 4.[6]

In this case, nothing indicates that KPS withdrew the mask mandate in response to plaintiff's lawsuit. Instead, KPS rescinded its mask mandate in response to the changing COVID-19 pandemic. After learning of the DHHS's decision on February 16, 2022, to lift its mask advisory and the CDC's decision on February 25, 2022, to remove its mask requirement for public transportation, KPS decided to end its mask mandate at the end of the school year in May 2022. The record indicates that KPS kept its mask mandate in place through the end of the year, in part, to account for the spread of COVID-19 that it anticipated in the community after staff and students returned from spring break. These facts indicate that KPS rescinded its mask mandate in response to the changing circumstances of the COVID-19 pandemic and not in response to plaintiff's lawsuit. Cf. *Speech First, Inc*, 939 F3d at 769. Given the balance of these facts, we decline to adopt and apply the voluntary cessation doctrine. Although there remains a possibility that public health safety conditions surrounding COVID-19 may change in the future, the issuance of a future

---

[6] Another recent case decided by the same panel, *IC v Comstock Pub Sch*, unpublished per curiam opinion of the Court of Appeals issued May 11, 2023 (Docket No. 362425) considered similar facts and issues and concluded that the facts of the case did not indicate that the school districts withdrew the mask policy in response to the plaintiffs' lawsuit and no reasonable expectation existed that the school districts would reinstate a mask mandate.

mask mandate remains speculative. We are not persuaded that the trial court erred by concluding that plaintiff's claims were rendered moot by KPS's rescission of its mask mandate.

Finally, plaintiff also appears to assert that her claims are not moot because she sought compensatory damages for violations of her constitutional rights of privacy and bodily integrity. Plaintiff cites *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 681; 983 NW2d 855 (2022), for her assertion, but provides no explanation of how *Bauserman* is relevant to her case or impacts her mootness argument. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "This Court will not search for authority to sustain or reject a party's position." *Phillips v Deihm*, 213 Mich App 389, 401; 541 NW2d 566 (1995). "If a party fails to adequately brief a position, or support a claim with authority, it is abandoned." *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006). Because plaintiff fails to explain how *Bauserman* is relevant to this case and fails to adequately brief her position, this argument is abandoned.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney